## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
JAMES DANIEL                  :    Civ. No. 3:17CV01015(SALM)
                              :
v.                            :
                              :
NANCY A. BERRYHILL,           :    May 9, 2018
ACTING COMMISSIONER, SOCIAL   :
SECURITY ADMINISTRATION       :
                              :
------------------------------x
```

### RULING ON CROSS MOTIONS

Plaintiff James Daniel ("plaintiff"), brings this appeal under §205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. §405(g), seeking review of a final decision by the Commissioner of the Social Security Administration (the "Commissioner" or "defendant") denying his application for Supplemental Security Income ("SSI") under the Act. Plaintiff has moved for an order reversing the decision of the Commissioner and remanding for further proceedings. [Doc. #17]. Defendant has filed a cross-motion seeking an order affirming the decision of the Commissioner. [Doc. #21].

For the reasons set forth below, plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #17]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **GRANTED.**

# I.   **PROCEDURAL HISTORY**[1]

Plaintiff filed an application for SSI on December 3, 2012, alleging disability beginning April 1, 2005. See Certified Transcript of the Administrative Record, Doc. #12, compiled on August 27, 2017, (hereinafter "Tr.") at 146-53. Plaintiff's application was denied initially on February 14, 2013, see Tr. 83-86, and upon reconsideration on August 30, 2013. See Tr. 88-91. Plaintiff has since amended his alleged onset date to November 15, 2012. See Tr. 36; see also Tr. 11.

On March 24, 2015, plaintiff, represented by Attorney John Spilka, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Matthew Kuperstein. See Tr. 33-60. Vocational Expert ("VE") Joseph Goodman testified by telephone at the hearing. See Tr. 52-59, 141-42. On July 6, 2015, the ALJ issued an unfavorable decision. See Tr. 8-23. On May 18, 2017, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's July 6, 2015, decision the final decision of the Commissioner. See Tr. 1-5. The case is now ripe for review under 42 U.S.C. §405(g).

---

[1] Plaintiff filed a joint statement of material facts on behalf of both parties. See Doc. #17-2.

Plaintiff timely filed this action for review and now moves to reverse the Commissioner's decision and to remand for further proceedings. [Doc. #17]. On appeal, plaintiff argues:

1. The ALJ failed to properly evaluate the opinion of plaintiff's treating orthopedic surgeon;

2. The ALJ failed to properly assess plaintiff's credibility; and

3. The ALJ failed to properly assess plaintiff's Residual Functional Capacity ("RFC").

See generally Doc. #17-1 at 2-16. As set forth below, the Court finds that ALJ Kuperstein did not err as contended, and that his decision is supported by substantial evidence of record.

## II.  **STANDARD OF REVIEW**

The review of a Social Security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. See Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305

U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. <u>See Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. <u>See</u> <u>Norman v. Astrue</u>, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." (citing <u>Tejada v. Apfel</u>, 167 F.3d 770, 773-74 (2d Cir. 1999))). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial

evidence." <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir. 1984) (alterations added) (citing <u>Treadwell v. Schweiker</u>, 698 F.2d 137, 142 (2d Cir. 1983)). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." <u>Williams ex rel. Williams v. Bowen</u>, 859 F.2d 255, 260-61 (2d Cir. 1988) (citing <u>Carroll v. Sec. Health and Human Servs.</u>, 705 F.2d 638, 643 (2d Cir. 1983)). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." <u>Johnston v. Colvin</u>, No. 3:13CV00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014) (citing <u>Peoples v. Shalala</u>, No. 92CV4113, 1994 WL 621922, at *4 (N.D. Ill. Nov. 4, 1994)).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." <u>Talavera v. Astrue</u>, 697 F.3d 145, 151 (2d Cir. 2012) (quoting <u>Lamay v. Comm'r of Soc. Sec.</u>, 562 F.3d 503, 507

(2d Cir. 2009)). **"[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports <u>the ALJ's decision</u>."** <u>Bonet ex rel. T.B. v. Colvin</u>, 523 F. App'x 58, 59 (2d Cir. 2013) (citations omitted).

## III. <u>SSA LEGAL STANDARD</u>

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits. 42 U.S.C. §423(a)(1).

To be considered disabled under the Act and therefore entitled to benefits, plaintiff must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §416.920(c) (requiring that the impairment "significantly limit[] ... physical or mental ability

to do basic work activities" to be considered "severe" (alterations added)).[2]

There is a familiar five-step analysis used to determine if a person is disabled. <u>See</u> 20 C.F.R. §416.920. In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

<u>Berry v. Schweiker</u>, 675 F.2d 464, 467 (2d Cir. 1982) (<u>per curiam</u>). If and only if the claimant does <u>not</u> have a listed

---

[2] Some of the Regulations cited in this decision were amended, effective March 27, 2017. Throughout this decision, and unless otherwise specifically noted, the Court applies and references the versions of those Regulations that were in effect at the time of the ALJ's decision. <u>See</u> <u>Lowry v. Astrue</u>, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying and referencing version of regulation in effect when ALJ adjudicated plaintiff's claim); <u>see also</u> <u>Alvarez v. Comm'r of Soc. Sec.</u>, No. 14CV3542(MKB), 2015 WL 5657389, at *11 n.26 (E.D.N.Y. Sept. 23, 2015) ("[T]he Court considers the ALJ's decision in light of the regulation in effect at the time of the decision." (citing <u>Lowry</u>, 474 F. App'x at 805 n.2)).

impairment, the Commissioner engages in the fourth and fifth steps:

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given [her] residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (alteration added) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). The RFC is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or

disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978). "[E]ligibility for benefits is to be determined in light of the fact that 'the Social Security Act is a remedial statute to be broadly construed and liberally applied.'" Id. (quoting Haberman v. Finch, 418 F.2d 664, 667 (2d Cir. 1969)).

## IV. THE ALJ'S DECISION

Following the above-described five-step evaluation process, the ALJ concluded that plaintiff was not disabled under the Act. See Tr. 19. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the "application date" of November 15, 2012. See Tr. 13.[3] At step two, the ALJ found that plaintiff had the severe impairment of degenerative disc disease of the lumbar spine with radiculopathy. See id.

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. See Tr. 14. The ALJ specifically considered Listing 1.04 (disorders of the spine). See id. Before moving on to step four, the ALJ found plaintiff had the RFC

---

[3] The joint statement of material facts states that November 15, 2012, is the "protective filing date" of plaintiff's application. Doc. #17-2 at 1.

to perform light work as defined in 20 CFR 416.967(b).
He is further limited to standing and walking for four
hours cumulatively during an eight hour workday where he
is able to use a cane for ambulation, as needed. He is
limited to pushing and/or pulling with the left lower
extremity; to only occasional climbing of ramps or
stairs, balancing, stooping, kneeling, crouching, or
crawling. He is limited to never climbing ladders,
ropes, or scaffolds. He is limited to work where he can
avoid concentrated exposure to vibration and does not
need to do constant standing and/or walking.

Tr. 14. At step four, the ALJ concluded that plaintiff had no

past relevant work. See Tr. 17. At step five, and after

considering plaintiff's age, education, work experience and RFC,

as well as the testimony of the VE, the ALJ found that other

jobs existed in significant numbers in the national economy that

plaintiff could perform. See Tr. 18-19.

## V.  DISCUSSION

Plaintiff raises three arguments in support of reversal or

remand. The Court will address each in turn.

### A.  *The Treating Physician Rule*

Plaintiff argues that the ALJ failed to properly evaluate

the collective opinions of plaintiff's treating orthopedic

surgeon, Dr. John Awad, M.D. See generally Doc. #17-1 at 2-9.

Plaintiff contends that the ALJ failed to provide "good reasons"

for discounting Dr. Awad's opinions. See generally id. Defendant

contends that the ALJ correctly weighed Dr. Awad's opinions, and

that substantial evidence supports the ALJ's decision to afford those opinions some or no weight. See generally Doc. #21 at 4-9.

### 1. Applicable Law, Generally

> "The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant," Green-Younger, 335 F.3d at 106. According to this rule, the opinion of a claimant's treating physician as to the nature and severity of the impairment is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §404.1527(d)(2); see, e.g., Green-Younger, 335 F.3d at 106; Shaw, 221 F.3d at 134.

Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); see also 20 C.F.R. §416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. 20 C.F.R. §416.927(c)(2).

When weighing any medical opinion, treating or otherwise, the Regulations require that the ALJ consider the following factors: length of treatment relationship; frequency of examination; nature and extent of the treatment relationship; relevant evidence used to support the opinion; consistency of the opinion with the entire record; and the expertise and specialized knowledge of the source. See 20 C.F.R. §416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996); SSR 06-03P, 2006 WL

2329939, at *3-4 (S.S.A. Aug. 9, 2006). The Second Circuit does not, however, require a "slavish recitation of each and every factor [of 20 C.F.R. §416.927(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (citing Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004) (per curiam)).

### 2.   Consideration of the Factors Set Forth in 20 C.F.R. §416.927(c)

Plaintiff first contends that "the ALJ erred by not applying certain regulatory factors to the assessment of Dr. Awad's opinion and by not giving good reasons for assigning Dr. Awad's opinions no weight and some weight within the context of the pertinent factors and the evidence in the record." Doc. #17-1 at 5 (sic).

As to Dr. Awad's "collective opinions", the ALJ stated:

John Awad, M.D., a treating orthopedic specialist, submitted a medical source statement in which he opined the claimant would likely not be able to obtain gainful employment. (Ex. 7F). Dr. Awad opined that the claimant could only sit for two hours in an eight-hour period but could stand and/or walk for eight hours in a workday. (Ex. 7F). Dr. Awad determined that the claimant could lift and carry up to twenty pounds occasionally and up to ten pounds frequently. Dr. Award prohibited the claimant from ever bending, squatting, crawling, or climbing and determined that he could only occasionally perform reaching. Dr. Awad also prohibited exposure to unprotected heights and moving machinery, though he stated the claimant could occasionally drive automotive equipment. Dr. Awad also determined the claimant required the use of a cane.

Dr. Awad's collective opinions are given no weight. To begin with, Dr. Awad's opinion regarding the claimant's inability to obtain gainful employment is an issue expressly reserved to the Commissioner ... Further, he appears to have merely checked off limitations on a boilerplate form without giving any specific explanation of symptoms that would justify the asserted limitations. Moreover, the extreme limitations reflected in his check-off form are inconsistent with the higher physical functioning reflected in the longitudinal record. Notably, treatment notes authored just eight days prior to the issuance of Dr. Awad's opinion show the claimant having few, if any, physical limitations.

Dr. Awad submitted another medical source statement in which he opined the claimant was medically unable to walk four blocks, ride in a car, or use public transit. (Ex. 15F/25). However, his opinions are given no weight as they are not generally consistent with the longitudinal record as previously noted.

Dr. Awad's office visit notes show him recommending the claimant be mindful of bending, lifting, twisting, excessive activities, and using good overall body mechanics. (Ex. 15F/18, 24, 28). Although they are fairly non-specific, Dr. Awad's recommendations are given some weight because they are fairly consistent with the level of lumbar spine degeneration established in the diagnostic imaging discussed above.

Tr. 17.[4]

_____

[4] On October 9, 2013, Dr. Awad issued a "Physician's Transportation Restriction Form," which was to "be used by LogistiCare to determine the best means of transportation for" plaintiff. Tr. 684. In that form, Dr. Awad opined that for plaintiff's post-operative period of 90 days, that plaintiff was unable to: walk 4 blocks; be driven by friends or family; and use public transportation. See id. Plaintiff does not appear to take issue with the weight ascribed to this opinion. In a footnote, plaintiff states: "This opinion does not cover a twelve month period and is not the foundation for plaintiff's disability claim." Doc. #17-1 at 5 n.2. Accordingly, the Court focuses its analysis on Dr. Awad's other opinions.

Plaintiff contends that in weighing the opinions of Dr. Awad, the ALJ failed to consider that Dr. Awad is a specialist, and plaintiff's treatment history with him. See Doc. #17-1 at 5-6. The ALJ's decision belies plaintiff's contention. The ALJ specifically stated that Dr. Awad is "a treating orthopedic specialist[.]" Tr. 17. Further, it is apparent that the ALJ considered the nature and length of Dr. Awad's treating relationship with plaintiff, as the ALJ explicitly considered Dr. Awad's treatment notes throughout his decision. See Tr. 17 (noting Dr. Awad's "treatment notes" and "office visit notes" in assessing the weight to be afforded to Dr. Awad's opinions); see also Tr. 15 (discussing Dr. Awad's 2013 treatment notes); Tr. 16 (discussing Dr. Awad's treatment notes from 2014 and 2015). Additionally, Dr. Awad's October 24, 2013, opinion states that he first saw plaintiff on February 6, 2013. See Tr. 352. Accordingly, it is apparent that the ALJ did consider Dr. Awad's specialization and treatment relationship with plaintiff.

Second, plaintiff contends that the ALJ failed to consider the consistency of Dr. Awad's opinions with the medical evidence of record, including MRIs and the prescription of "strong medications including opioids to treat [plaintiff's] pain[.]" Doc. #17-1 at 6. However, the ALJ did in fact explicitly consider the consistency (or lack thereof) of Dr. Awad's

opinions with the other evidence of record. The ALJ stated: "[T]he extreme limitations reflected in his check-off form are inconsistent with the higher physical functioning reflected in the longitudinal record. Notably, treatment notes authored just eight days prior to the issuance of Dr. Awad's opinion show the claimant having few, if any, physical limitations." Tr. 17. For reasons that will be discussed below, this conclusion is supported by substantial evidence.[5] Additionally, as to Dr. Awad's "recommendations", the ALJ also explicitly considered the consistency of those recommendations with the record. The ALJ stated: "Although they are fairly non-specific, Dr. Awad's recommendations are given some weight because they are fairly consistent with the level of lumbar spine degeneration established in the diagnostic imaging discussed above." Tr. 17. Accordingly, plaintiff's contention that the ALJ failed to consider the consistency of Dr. Awad's opinions with the rest of the record is not persuasive.

Thus, for the reasons stated, the Court finds the ALJ adequately considered the factors laid out at 20 C.F.R. §416.927(c), and there is no error.

---

[5] Although there may be evidence in the record supporting plaintiff's position, that is not the question before the Court. Rather, the Court must consider whether substantial evidence supports the ALJ's decision. See Bonet, 523 F. App'x at 59.

### 3. Failure to Provide "Good Reasons" for Discounting the October 24, 2013, Opinion of Dr. Awad

Plaintiff next asserts that "the ALJ's reasons for giving Dr. Awad's opinion no weight regarding his functional capacity assessment... were not persuasive." Doc. #17-1 at 6. Plaintiff specifically takes issue with the ALJ: (1) having discounted Dr. Awad's October 24, 2013, opinion for using a boilerplate checklist; and (2) having found that Dr. Awad's opinion was inconsistent with other evidence in the record. See id. at 6-8.[6]

As to Dr. Awad's use of a boilerplate checklist, plaintiff contends that the form as completed was based on Dr. Awad's "knowledge and treatment of the plaintiff's chronic lumbar pain ... his opinion was not based upon the plaintiff's subjective complaints but rather his clinical history." Id. at 6-7. Notably, plaintiff does not support his argument with any citation to the applicable Regulations or controlling case law.

The ALJ did not discount Dr. Awad's October 24, 2013, opinion because it was based on plaintiff's subjective complaints. Rather, the ALJ discounted that opinion in part because it "merely checked off limitations on a boilerplate form without giving any specific explanation of symptoms that would justify the asserted limitations." Tr. 17. This is an accurate

---

[6] Plaintiff does not contest the ALJ affording no weight to Dr. Awad's statement that plaintiff is unable to work.

description of Dr. Awad's October 24, 2013, opinion. See Tr. 349-58 (October 24, 2013, opinion of Dr. Awad). Indeed, Dr. Awad did not complete that portion of the form that requested him to "provide objective clinical findings" in support of his evaluation. See Tr. 352. The other two areas on the form in which Dr. Awad could have further explained plaintiff's condition and resulting limitations contain terse and undeveloped statements. See Tr. 351. The Regulations on this point are instructive. "The better an explanation a source provides for a medical opinion, the more weight [the Commissioner] will give that medical opinion." 20 C.F.R. §416.927(c)(3). Here, Dr. Awad did not provide any explanation for the functional limitations assessed. Accordingly, the ALJ properly discounted Dr. Awad's opinion for its lack of explanation.

Plaintiff takes issue with the ALJ's characterization of the limitations set forth in the October 24, 2013, opinion as "extreme," and with the ALJ's finding of inconsistencies between those limitations and other evidence in the record. Regardless of how the ALJ characterized the limitations ascribed to plaintiff by Dr. Awad, the fact remains that many of those limitations are inconsistent with other evidence in the record. Compare, e.g., Tr. 352 (Dr. Awad's opinion that plaintiff could

only sit for 2 hours, and stand and walk for 1 hour, during an eight-hour workday), with, e.g., Tr. 266, 296, 301, 305-06, 332, 633 (normal back and musculoskeletal examinations, with some tenderness to lower back with palpation), and Tr. 662, 663, 665, 680 (unremarkable orthopedic examinations), and Tr. 332, 452, 680 (normal gait and ambulates without cane), and Tr. 170 (no difficulties observed with plaintiff's ability to sit, stand or walk), and Tr. 264, 289, 290, 293, 309, 300, 305, 336, 342, 346, 348 (reports of no pain, or no back pain specifically). Accordingly, there is no error.

Plaintiff also contends, without relying on any supporting authority, that Dr. Awad's opinion was entitled to deference because there was no other alternative opinion upon which to rely. See Doc. #17-1 at 7. This argument fails to account for the opinion of state reviewing non-examiner, Dr. Abraham Bernstein. See Tr. 77-79.[7] Regardless, an ALJ is not required to afford controlling weight to a medical opinion simply because there are no other opinions of record. Neither the Regulations, nor the controlling case law, contemplate such a result. See, e.g., 20 C.F.R. §416.927; Atkinson v. Comm'r of Soc. Sec., No. 5:16CV0809(GTS), 2017 WL 1288723, at *7 (N.D.N.Y. Apr. 6, 2017)

---

[7] As will be discussed, infra, the ALJ incorporated many of the postural limitations found by Dr. Bernstein into the RFC. Compare Tr. 14, with Tr. 78.

("[T]here is no legal requirement that the ALJ rely on
a medical opinion in every case to formulate the RFC. Rather,
the ALJ has the responsibility of reviewing all the evidence
before her, resolving inconsistencies, and making a
determination consistent with the evidence as a whole.").
Indeed, "[a]n ALJ is not required to give deference to a
claimant's treating physician's opinion where that opinion, as
here, is not consistent with other substantial evidence in the
record." Wavercak v. Astrue, 420 F. App'x 91, 93 (2d Cir. 2011)
(citation and internal quotation marks omitted). Accordingly,
the ALJ was not required to defer to the opinion of Dr. Awad.

Plaintiff next appears to contend that the ALJ failed to
consider that Dr. Awad's October 24, 2013, opinion was
consistent with his treatment notes. See Doc. #17-1 at 8.
Plaintiff states: "Dr. Awad's treatment notes indicated the
plaintiff should be mindful of bending, lifting, twisting and
excessive activities (Tr. 677, 683, 687). This statement was
given some weight by the ALJ (Tr. 17). The plaintiff asserts
that these restrictions were consistent with his opinion given
on October 24, 2013." Id. Despite plaintiff's assertions, the
restrictions in Dr. Awad's treatment notes are not entirely
consistent with his October 24, 2013, opinion. In that opinion,
which was authored about one month after plaintiff's spinal

surgery, Dr. Awad opined that plaintiff could <u>never</u> bend, squat, crawl or climb. <u>See</u> Tr. 353. By contrast, Dr. Awad's treatment notes, which state plaintiff should be "mindful" of bending, lifting, twisting and excessive activities, suggest that plaintiff was not entirely precluded from such activities. <u>See</u> Tr. 677, 683, 687 (Dr. Awad's treatment notes from October and December 2013). Although Dr. Awad's October 24, 2013, opinion could be read to comport with his suggestion that plaintiff be "mindful" of lifting, it appears that the ALJ credited that suggestion and did incorporate said restrictions into the RFC, which limits plaintiff to light work. Dr. Awad opined that plaintiff could "frequently" lift or carry up to ten pounds, and occasionally lift or carry twenty pounds. <u>See</u> Tr. 353. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. 416.967(b). Therefore, it appears that the ALJ did in fact credit the limitations set forth in the October 24, 2013, opinion that were consistent with Dr. Awad's treatment notes.

Accordingly, the Court finds no error in the reasons given for discounting Dr. Awad's opinions, each of which is supported by substantial evidence of record.

*B.    The ALJ's Assessment of Plaintiff's Credibility*

Next, plaintiff asserts that the ALJ erred in his
assessment of plaintiff's credibility. See Doc. #17-1 at 9-13.
Defendant responds that substantial evidence supports the ALJ's
credibility findings. See Doc. #21 at 9-11.

After summarizing plaintiff's testimony, and a "careful
consideration of the evidence," the ALJ found "that
[plaintiff's] 'severe' medically determinable impairments could
reasonably be expected to cause the alleged symptoms[,]" but
that "the collective evidence [did] not support a finding that
[plaintiff's] conditions are of such a disabling nature that
they would, singly or in combination, prevent the performance of
the above residual functional capacity assessment." Tr. 15. The
ALJ further concluded that plaintiff's "allegations regarding
the intensity and limiting effects of his spinal degeneration
are inconsistent with the remaining abilities reflected in the
longitudinal medical record." Id. In making these determinations
the ALJ

> considered ... during the relevant time period: 1) the
> claimant's activities of daily living; 2) the location,
> duration, frequency, and intensity of symptoms; 3)
> factors that precipitate and aggravate the claimant's
> symptoms; 4) the type dosage, effectiveness, and side
> effects of medications; 5) the claimant's treatment
> other than medication; 6) any measures other than
> treatment used to relieve the symptoms; and 7) any other
> factors regarding the claimant's functional limitations
> and restrictions. (SSR 96-7p).

Id.

"Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." Pietrunti v. Dir., Office of Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) (quotation marks and citation omitted). The regulations set forth a two-step process that the ALJ must follow in evaluating plaintiff's subjective complaints. First, the ALJ must determine whether the record demonstrates that the plaintiff possesses a "medically determinable impairment that could reasonably be expected to produce [plaintiff's] symptoms, such as pain." 20 C.F.R. §416.929(b). Second, the ALJ must assess the credibility of the plaintiff's complaints regarding "the intensity and persistence of [plaintiff's] symptoms" to "determine how [the] symptoms limit [plaintiff's] capacity for work." 20 C.F.R. §416.929(c). The ALJ should consider factors relevant to plaintiff's symptoms, such as pain, including: (1) the claimant's daily activities; (2) the "location, duration, frequency, and intensity" of the claimant's pain or other symptoms; (3) any precipitating or aggravating factors; (4) the "type, dosage, effectiveness, and side effects of any medication" taken by claimant to alleviate the pain; (5) "treatment, other than medication," that plaintiff has received for relief of pain or

other symptoms; (6) any other measures plaintiff has used to relieve symptoms; and (7) other factors concerning plaintiff's "functional limitations and restrictions due to pain or other symptoms." Id. The ALJ must consider all evidence in the case record. See SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). The credibility finding "must contain specific reasons ... supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *4.

Plaintiff contends that the ALJ's "deficient credibility finding cannot stand" for five reasons. Doc. #17-1 at 11. Generally, plaintiff appears to contend that the ALJ failed to consider each of the factors set forth in 20 C.F.R. §416.929(c) when assessing plaintiff's credibility. "While these factors are relevant to the evaluation, they are not a rigid seven step prerequisite to the ALJ's finding. Rather, the predominate focus must be on the entire record as a whole." Flores v. Astrue, No. 3:09CV1829(JCH), 2010 WL 5129121, at *12 (D. Conn. Sept. 24, 2010) (internal citation omitted), report and recommendation adopted, 2010 WL 5129110 (Dec. 9, 2010). Bearing that principle in mind, the Court turns to each of the five claimed errors.

<u>First</u>, plaintiff contends that "the credibility finding was tainted because the ALJ failed to properly analyze the opinion of the treating source[.]" Doc. #17-1 at 11. The Court has already addressed and rejected this argument.

<u>Second</u>, plaintiff contends that the ALJ erred because he "provided absolutely no discussion of the plaintiff's activities of daily living." Doc. #17-1 at 11. Plaintiff's contention is not accurate. The ALJ specifically acknowledged plaintiff's testimony that "he relies on his fiancé to do all of the household chores and manage the finances." Tr. 15 (sic). To the extent plaintiff argues that it was error for the ALJ to not specifically mention plaintiff's activities of daily living questionnaires, <u>see</u> Tr. 172-80, 199-206, it is well settled that the ALJ's decision need not mention every piece of evidence before him where, as here, his rationale is clear. <u>See</u> <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").[8] Indeed, "[a]n

---

[8] The defendant, somewhat confusingly, states that "the ALJ did not refer to Mr. Daniel's level of activities when making the credibility determination." Doc. #21 at 10. This, however, is

ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).

Third, plaintiff contends that the ALJ erred because he "offered no discussion of the plaintiff's medication regimen[.] ... The fact that [plaintiff] was prescribed such strong medication suggests that his treating sources believed his medical condition substantiated his complaints of severe pain." Doc. #17-1 at 12. Again, plaintiff's characterization of the ALJ's decision is not accurate. The ALJ explicitly noted that Dr. Awad had begun weaning plaintiff from his medications in December 2013. See Tr. 15 (citing Ex. 15F/18). The record cited in support of this conclusion specifically references plaintiff's Percocet prescription. See Tr. 677. Further, the ALJ specifically stated that he considered "the type, dosage, effectiveness, and side effects of medications[.]" Tr. 15. Indeed, throughout his decision, the ALJ cites to plaintiff's treatment records, which explicitly note the extent of plaintiff's medication regimen. See Tr. 15 (citing to Ex. 1F/9 (Tr. 242), which lists plaintiff's medications, including

---

the exact error claimed by plaintiff and not an accurate description of the ALJ's decision.

Percocet); Id. (citing to Ex. 1F/3-4 (Tr. 236-37), which lists plaintiff's medications as including "Oxycodone 5/325 mg one tablet twice a day"); Tr. 16 (citing to Ex. 14F/1-3, 9-10, 13-14 (Tr. 642-44, 650-51, 654-58), which each relate to plaintiff's pain management appointments and list plaintiff's medication regimen, including the use of Percocet and Oxycontin). Again, the Regulations require only that the ALJ consider certain factors when assessing a plaintiff's credibility. See 20 C.F.R. 416.929(c). Here, it is apparent that throughout his decision the ALJ considered plaintiff's medication regimen. Accordingly, there is no error.

Fourth, plaintiff contends that the ALJ "ignored plaintiff's efforts at physical therapy that proved unsuccessful (Tr. 669)." Doc. #17-1 at 12. The ALJ did not ignore plaintiff's efforts at physical therapy. Indeed, the ALJ's decision specifically cites to plaintiff's physical therapy records, including those which state that the therapy caused plaintiff pain. See Tr. 16 (citing Ex. 8F/37 (Tr. 395), Physical Therapy Daily Note: "Attempted core stability with single leg hip flexion/extension (unable to perform with left due to pain); attempted knee-to-chest stretches (painful)"); see also Tr. 16 (citing Ex. 8F/45-50 (Tr. 403-08), physical therapy notes). Additionally, the ALJ explicitly stated that in making his

credibility determination he considered plaintiff's "treatment other than medication" and "any measures other than treatment used to relieve the symptoms[.]" Tr. 15. Therefore, the Court finds no error.

Last, plaintiff contends that the ALJ mischaracterized one of plaintiff's medical records. See Doc. #17-1 at 13. Plaintiff takes issue with the ALJ's statement that "although [plaintiff] alleges disabling back pain since November 15, 2012, his reporting at Exhibit 1F/9 shows his pain was tolerable up until January 9, 2013." Tr. 15. Plaintiff contends that he did not state that his pain was tolerable, and the ALJ did not question plaintiff as to his alleged onset date. See Doc. #17-1 at 13. The record cited by the ALJ, dated January 22, 2013, states: "Mr. Daniel has had chronic low back pain for several years, however, around 1/09/2013, he developed acute onset for more increasing low back pain in the absence of any traumatic injury." Tr. 242. Although plaintiff did not report that his pain was tolerable, an inference can be drawn from that record that plaintiff's back pain did not become severe and limiting until January 9, 2013. The ALJ properly considered the consistency of plaintiff's statements with the evidence of record. See Burnette v. Colvin, 564 F. App'x 605, 609 (2d Cir. 2014) ("Here, the ALJ found inconsistencies between

[plaintiff's] statements and the evidence. ... Thus, the ALJ acted well within his discretion in concluding that [plaintiff] was less than credible on at least some of her claims."). Additionally, the ALJ's consideration of that record was but one factor in the ALJ's overall credibility determination, which complies with the Regulations and is supported by substantial evidence. Accordingly, there is no error.

Here, where the ALJ has identified specific reasons for his credibility determination, which are supported by substantial evidence in the record, the Court will not second-guess his decision. See Stanton v. Astrue, 370 F. App'x 231, 234 (2d Cir. 2010). Moreover, the ALJ had the opportunity to personally observe plaintiff and his testimony, something the Court cannot do. Accordingly, the Court finds no error in the ALJ's assessment of plaintiff's credibility.

### C. The RFC Determination

Last, plaintiff contends that the ALJ's RFC determination is "inadequate and not in compliance" with the Regulations. See Doc. #17-1 at 14-15. Defendant responds that the ALJ's RFC determination is supported by substantial evidence. See generally Doc. #21 at 11-12.

Plaintiff's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. §416.945(a)(1). The RFC is

assessed "based on all the relevant evidence in [the] case record[,]" including "all of the relevant medical and other evidence." 20 C.F.R. §416.945(a)(1), (3).

Plaintiff first contends that because the ALJ's credibility determination was "tainted," that the RFC is therefore also "analytically flawed." Doc. #17-1 at 14. However, for reasons previously stated, the ALJ's credibility findings comply with the Regulations and are supported by substantial evidence. Accordingly, the Court rejects plaintiff's argument on this point.[9]

Plaintiff next takes issue with the ALJ's statement that the "evidence supports a reasonable inference that the claimant's pain levels were likely controlled to an extent that would have allowed for regular work activity within twelve months of his supplemental security income application date." Doc. #17-1 at 14 (citing Tr. 16). Plaintiff contends: "This inference is without any reasonable foundation[.]" Id. Despite plaintiff's arguments to the contrary, substantial evidence supports the inference drawn by the ALJ. For example, in December of 2013, Dr. Awad had started to wean plaintiff from

---

[9] Plaintiff also asserts that "the ALJ did not properly weigh the plaintiff's daily activities in determining his RFC[.]" Doc. #17-1 at 15. The Court has already addressed this argument in connection with the ALJ's credibility analysis and declines to address it again here.

his pain medication. See Tr. 677. For the year following the date of plaintiff's SSI application, plaintiff reported a pain level of "0" to his primary care physician, despite noting "backache" as an "active problem." Tr. 288-89; see also Tr. 290, 292-93, 294-95, 300-01. Physical examinations during that time were also largely unremarkable. See Tr. Tr. 266, 296, 301, 305-06, 332, 633 (normal back and musculoskeletal examinations, with some tenderness to lower back with palpation), Tr. 680 (unremarkable orthopedic examinations). There were also several instances during that period when plaintiff was observed ambulating with a normal gait and without a cane. See, e.g., Tr. 332, 452, 680 (normal gait and ambulates without cane). Accordingly, there is substantial evidence of record to support the "reasonable inference that the [plaintiff's] pain levels were likely controlled to an extent that would have allowed for regular work activity within twelve months of his supplemental security application date." Tr. 16.

Plaintiff next contends that the RFC is not supported by substantial evidence because the ALJ did not rely on any medical opinion, and therefore, the RFC determination was "based upon his own interpretation of raw medical data." Doc. #17-1 at 15. Defendant responds that "the ALJ's RFC finding need not track any one medical opinion" and that the "ALJ has the

responsibility to determine a claimant's RFC based on all the relevant medical and other evidence in the record." Doc. #21 at 12.

Plaintiff's assertion that the ALJ did not rely on any one medical opinion in crafting plaintiff's RFC is accurate. Rather, the ALJ based the RFC on limitations reflected in the entirety of the record, including Dr. Awad's October 24, 2013, opinion, Dr. Awad's treatment notes, and the opinion of state reviewing non-examiner Dr. Bernstein. As previously noted, the ALJ incorporated Dr. Awad's restrictions as to plaintiff's ability to bend, lift and carry. He also incorporated many of the postural limitations found by Dr. Bernstein. See Tr. 77-78. The RFC determination does not need to "perfectly correspond with any of the opinions of medical sources[.]" Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013). Indeed, where "the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity ... a medical source statement or formal medical opinion is not necessarily required[.]" Monroe v. Comm'r of Soc. Sec., 676 F. App'x 5, 8 (2d Cir. 2017) (citations omitted). In that regard, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta, 508 F. App'x at 56. Here, there was sufficient evidence,

including opinions from several medical sources, from which to ascertain plaintiff's RFC. The ALJ reviewed all of the relevant evidence of record and permissibly assessed plaintiff's RFC after a consideration of that evidence. <u>See</u> 20 C.F.R. 416.945(a). Accordingly, the Court finds that substantial evidence, as discussed throughout this decision, supports the ALJ's RFC determination and there is no error.

## VI.   <u>CONCLUSION</u>

For the reasons set forth herein, plaintiff's Motion for Order Reversing the Decision of the Commissioner **[Doc. #17]** is **DENIED,** and defendant's Motion for an Order Affirming the Decision of the Commissioner **[Doc. #21]** is **GRANTED.**

SO ORDERED at New Haven, Connecticut, this 9th day of May, 2018.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
